IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISRICT OF PENNSYLVANIA

KAREN WALLA            )
                       )
   Plaintiff,       ) No. 13-351
                       )
V.

COMMISSIONER OF
SOCIAL SECURITY

   Defendant.

## SYNOPSIS

Plaintiff, on behalf of her minor child, filed an application for supplemental social security income, alleging disability based on attention deficit hyperactivity disorder (ADHD). Her claim was denied initially upon hearing before an ALJ, at which Plaintiff was not represented by counsel. Plaintiff, again proceeding pro se, now appeals the Commissioner's decision. For the following reason, Plaintiff's Motion will be granted, and Defendant's denied. This matter will be remanded for further proceedings.

## OPINION

### I. STANDARD OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3) 7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the

district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). I cannot affirm administrative action by substituting what I think is a satisfactory explanation. Orabi v. AG of the United States, 738 F.3d 535, 539 (3d Cir. 2014). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

Pertinent here, pro se submissions are to be construed liberally. Ray v. Colvin, 2014 U.S. Dist. LEXIS 25891, at *12 (D.N.J. Feb. 28, 2014). Where a claimant is pro se, the ALJ has a heightened duty to help develop the administrative record, and "must scrupulously and

conscientiously probe into, inquire of, and explore for all the relevant facts." Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

## II. PLAINTIFF'S MOTION

The hearing before the ALJ took place on December 9, 2011. The ALJ's decision was dated January 5, 2012. Claimant was born on November 21, 2002, making her 9 years old at the time of the hearing. Plaintiff's present pro se submission indicates that her daughter rides a special bus to school, has in-home aid for behavioral and motor skills, has a difficult time getting along with others, and has no friends, and generally struggles in various ways. Plaintiff raises no particular argument regarding the ALJ's decision, but cannot understand, under the circumstances, why her daughter was denied benefits.

### A. EVIDENTIARY RECORD

The record reflects claimant's near-constant and longtime involvement with a broad array of child and social services, including special education, behavioral health rehabilitation services, outpatient psychiatric services, occupational therapy, and a special therapeutic summer program. The record contains multiple psychiatric and other evaluations, including a July 21, 2010 evaluation signed by Dr. William Kohler, a psychologist, and counselor Nicole Drake; an October 28, 2010 evaluation report by Dr. Robert Washek, a psychologist; treatment notes, plans, and evaluations from Dr. Charles Joy, from the time period between March, 2009 to March, 2011; a report dated November 23, 2010 from agency consulting examiner Dr. Michael Thayer; a May 25, 2011 evaluation by Dr. Michael Skarlinski, a psychologist; and an occupational therapy assessment by therapist Mary Anderson, dated September 13, 2011.

3

Dr. Thayer noted diagnostic impressions of ADHD, provisional ODD, and significant psychosocial problems, including those in the nature of social skills deficit, significant learning difficulties. After a May 26, 2011 evaluation, Dr. Skarlinski noted that claimant becomes verbally and physically aggressive, argumentative, challenging, restless, easily bored, and tests limits. She has difficulty following directions and needs repeated instruction. He observed that she demonstrates impulsive and unsafe behaviors, and is disruptive in public places. Dr. Skarlinski assigned a GAF of 46, and diagnosed claimant with ODD and ADHD.[1] In 2009, Dr. Washek diagnosed claimant with Disruptive Behavior Disorder, and assigned a GAF of 55, and discussed claimant's physically aggressive behaviors at school. In a March, 2010 evaluation, Dr. Joy assigned a GAF of 60, and prescribed Adderall. He also diagnosed her with ADHD and borderline intellectual functioning. Dr. Drake diagnosed her, in July, 2010, with disruptive behavior disorder and ADHD, with a GAF of 46. These medical opinions are supplemented by statements or testimony from Plaintiff's teachers, family members, and participants in her individualized educational plan ("IEP"), detailing numerous behavioral, social, learning, safety awareness, and motor difficulties.

### B. LISTINGS

I note several omissions from the ALJ's decision. For example, the records before the ALJ reflected a diagnosis of ADHD, a diagnosis of ODD, various developmental delays, and an IQ of 68. Moreover, at the hearing, claimant's mother testified that her daughter had ADHD, oppositional behavior disorder, and developmental delays.[2] In his decision, the ALJ considered Listing 122.11, for ADHD, and determined that claimant did not meet that listing. He did not,

---

[1] A GAF score of 51-60 indicates moderate symptoms; a GAF of 45 indicates serious symptoms. Thus, claimant's GAF was not, as the ALJ stated, "regularly rated at the high end of the moderate range."

[2] When claimant's mother was asked if there was anything else she wanted to tell the ALJ, she responded, "I do have a thing from the school saying she is below average in like her testing and stuff, that where her – like IQ – isn't of a nine year old level."

4

however, take note of claimant's IQ scores of 68 to 71, or consider Listing 112.05D, which addresses mental retardation.[3] Likewise, the ALJ failed to consider Listing 12.08, which might encompass ODD or oppositional behavioral disorder. See O'Brian v. Astrue, 2011 U.S. Dist. LEXIS 66743 (N.D. Miss. 2011). While the ALJ may well have had good reason for failing to refer to Listings other than 122.11, I cannot review those reasons in the absence of explanation. See Davis v. Colvin, 2014 U.S. Dist. LEXIS 140171, at **26-27 (E.D. Wisc. Oct. 2, 2014). A reasoned explanation regarding the Listings is required to allow meaningful judicial review. Burnett v. Commissioner, 220 F.3d 112, 119-20 (3d Cir. 2000). Although the ALJ adequately explained his conclusions regarding Listing 122.11, the circumstances warrant remand for further elucidation or consideration of other potentially applicable Listings.

### C. FUNCTIONAL EQUIVALENCE DOMAINS

Next, I address the ALJ's conclusions that claimant was not markedly limited in any of the six domains set forth in the Code of Federal Regulations at 20 C.F.R. § 416.926a(b)(i)-(vi). These domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. A limitation is "marked" if it "interferes seriously with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)." A marked limitation is "'more than moderate' but 'less than extreme.'" Id.

#### A. Acquiring and Using Information

First, I address the domain of acquiring and using information, which considers the child's ability to learn, and think about and use, information. SSR 09-3p. As the ALJ stated,

---

[3] That listing requires a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant physical limitation of function. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings), Section 112.05D.

5

SSR 09-3p identifies examples of limited functioning in this domain. Those include, <u>inter alia</u>, difficulty comprehending oral or written directions, or not developing "readiness skills" such as counting, as are peers. "Because much of a school-age child's learning takes place in a school setting, school records are often a significant source of information about limitations in this domain. For example, the SSA will consider whether the child is reading, writing, or doing arithmetic at appropriate grade level." <u>Davis</u>, 2014 U.S. Dist. LEXIS 140171, at **32-33. Here, school records suggest that claimant was, for example, reading below grade level and had a borderline IQ, and had other educational or learning deficits. Nonetheless, the entirety of the ALJ's analysis is as follows:

> Claimant's mother reported that claimant has limitations in her ability to progress or learning, specifically that she cannot write a simple story, add and subtract numbers over 10, understand money, or tell time. Claimant's teacher reported problems in her ability to comprehend oral instructions, with vocabulary and reading material, math, learning new material, and recalling learned material. Additionally, claimant has problems expressing herself and participating in class discussions. Claimant's intervention therapist notes a lack of attention and focus. Dr. Thayer reported that claimant has weakness in verbal comprehension, perceptual reasoning, and working memory. This evidence, taken in the aggregate, supports a finding that claimant has less than marked limitation in acquiring and using information.

Given that the evidence recited appears inconsistent with the ALJ's conclusion, the reasons for that conclusion are unclear.[4] Further explanation and consideration is necessary.

### B. Attending and Completing Tasks

Next, I address the domain of attending and completing tasks. This domain includes the child's ability to initiate and maintain attention, to focus on an activity or task despite distractions. SSR 09-4p. The ALJ noted several comments from claimant's mother, teacher, and

---

[4] Aside from mentioning that significant weight would be given to Dr. Thayer's opinion, it is unclear whether and how the ALJ considered the remaining medical opinions and other evidence of record. It is further unclear whether any of the physicians, such as Dr. Joy or others from The Achievement Center, were considered treating physicians and their opinions accorded appropriate weight.

6

Dr. Thayer regarding Plaintiff's difficulties related to this domain, but then observed that claimant enjoys activities such as coloring and board games, and that claimant works on arts and crafts projects and completes her homework and most of her chores. Thus, he concluded, Plaintiff suffered less than marked limitations in this domain. Given the nature and magnitude of omitted medical opinion evidence regarding ADHD and related problems with attentiveness and ability to focus, and the fact that the cited evidence does not appear supportive of the ALJ's conclusion, the ALJ's explanation is insufficient to allow meaningful review.

### C. Moving About and Manipulating Objects

This domain considers how well a child is able to move her body, and how she moves and manipulates objects. It addresses both gross and fine motor skills. SSR 09-6p. When assessing the domain of moving about and manipulating objects, the ALJ failed to refer, <u>inter alia</u>, to a therapist's conclusion that claimant was several years below age equivalent for visual motor integration, visual perception, and motor coordination. The entire analysis of that domain consists of the following:

> Claimant's teacher noted that claimant has problems moving her body, moving and manipulating things, coordination, physical activities, and motor movements. Dr. Thayer reported that claimant's perceptual motor processing was immature. Claimant receives occupational therapy in the home. The evidence of record establishes a less than marked limitation in moving about and manipulating objects.

Again, under the circumstances, more is needed to allow proper review of the ALJ's conclusion and the evidence on which he relied in reaching that conclusion.

### D. Interacting and Relating with Others

Finally, I address the domain of interacting and relating with others. As the ALJ observed, this domain includes how well a child is able to cooperate with others, comply with rules, and respect and take care of the possessions of others. In doing so, the ALJ stated that

7

claimant's teacher reported problems "playing cooperatively, making and keeping friends, behaving appropriately, following rules, and participating in conversation." He noted that Plaintiff's therapist stated that claimant likes to be around other children, but has limited social skills, and Dr. Thayer's observation that claimant demonstrates minimal social reciprocity. While the ALJ seemed to accept claimant's testimony that she had friends and was a cheerleader, he did not address the fact that her other testimony – such as her statements regarding her ability to pay attention or behave at school, or her attendance at medical appointments – was at odds with virtually the entire record. The ALJ's few observations, which constitute the entirety of his analysis on this point, omit multiple reports in the record regarding claimant's behavior, including her removal from school due to the destruction of property, expulsion from the school bus due to behavior, impulsivity, and her teacher's reports of high levels of disruptive behaviors and multiple problems with peers. In light of these omissions, as well as the information on which the ALJ relied, remand is required for the ALJ to explain, or reconsider, his conclusions.

### E. NEW EVIDENCE

Although not pertinent to the time period at issue before the ALJ, Plaintiff has submitted records from 2014, including documents detailing claimant's ADHD and ODD, as well as genetic testing that revealed a genetic brain disorder. She has also submitted papers relating to her daughter's current individualized educational plan.[5] Nonetheless, our Court of Appeals "has found that new evidence that post-dates the end of disability status may allow the ALJ to consider the period of disability in a different light, and could be directly relevant to the determination of an individual's disability status." Tommas v. Astrue, 2011 U.S. Dist. LEXIS 132614, at *18 (D.N.J. Nov. 16, 2011). Thus, new evidence may be used to support pre-existing

---

[5] The proceedings to date, of course, are not conclusive as to the claimant's entitlement to benefits for disability during any time period subsequent to the ALJ's decision. Thus, they do not impact any subsequent claims, for disability during any time period after January 5, 2012, that Plaintiff might make in the future.

8

subjective complaints. Id. However, any piece of evidence that attempts only to prove a disability that developed or worsened after the date last insured need not be considered. See Szubak v. Health and Human Servs., 745 F. 2d 831, 833 (3d Cir. 1983).

In this case, I find that much of the evidence that Plaintiff presently submits is of the former type, rather than the latter. Plaintiff does not exclusively attempt to show a newly developed or worsened condition; the evidence, however, may shed light on claimant's condition during the pertinent time period. For example, a genetic brain disorder might have been present at the time of the hearing, albeit newly identified; as another example, new evaluation notes by psychologist Geraldine Marz state that claimant's 2014 state "does not represent a significant change from her baseline presentation over the years," and speaks to some of claimant's past history. Moreover, the new evidence must present a "reasonable possibility" of reversal, and the burden of such a showing is not great. Newhouse v. Heckler, 753 F.2d 283, 287 (3d Cir. 1985). This evidence presents such a possibility.

## CONCLUSION

In sum, because the ALJ did not specifically discuss much of the pertinent record, I cannot assess whether the omitted portions were considered and rejected, or instead not considered at all. It is also unclear why the recitation of negative teacher, parent, and provider comments about claimant's condition, in the discussion of functional domains, resulted in the conclusion her impairments were not marked. Remand is appropriate if the ALJ has failed to substantiate his findings, or explain his reasoning. Tommas, 2011 U.S. Dist. LEXIS 132614, at *14. While Defendant's brief raises several supporting explanations for the ALJ's conclusions, I will not affirm the decision on grounds other than those identified by the ALJ. In this case, additional explanation or consideration is required, and this matter will be remanded for further

proceedings consistent with this Opinion.  On remand, the ALJ may consider new evidence that post-dates his decision, as appropriate, to the extent that it sheds light on claimant's condition during the pertinent time period. I note, as well, that Plaintiff decided to proceed without counsel at the hearing level, apparently in order to avoid further delays.  She may, however, elect to obtain counsel on remand.  An appropriate Order follows.

**ORDER**

AND NOW, this 17th day of October, 2014, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion is GRANTED and Defendant's DENIED, and this matter is remanded for further proceedings consistent with the foregoing Opinion.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court